IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 0:23-CV-61696-AHS

STARBOARD YACHT GROUP LLC,

     *Plaintiff*

vs.

M/V OCTOPUSSY, a 1988 Heesen built 143-ft. motor yacht,
Registry No. JMP15060 her engines, tackle, boats, gear,
Seakeepers, appurtenances, etc. *in rem*, and
CONTESSA MARINE RESEARCH LLC, *in personam*

     *Defendants*
_____/

SHM LMC, LLC, d/b/a Lauderdale Marine Center,

     *Intervening Plaintiff*

vs.

M/V OCTOPUSSY, a 1988 Heesen built 143-ft. motor yacht, Jamaica
Registry No. JMP15060 her engines, tackle, boats, gear, Seakeepers,
appurtenances, etc. *in rem*, $400,000 held as securityin escrow
for the release of the M/V OCTOPUSSY, *in rem* and pursuant
to Rule B, and CONTESSA MARINE RESEARCH LLC, *in personam*

     *Defendants*
_____/

SHM LMC, LLC, d/b/a Lauderdale Marine Center,

     *Cross-Plaintiff*

vs.

STARBOARD YACHT GROUP LLC,

     *Cross-Defendant.*
_____/

75479470;1

## <u>SHM LMC LLC'S VERIFIED COMPLAINT IN INTERVENTION AND CROSS-CLAIM</u>

Intervening Plaintiff, SHM LMC, LLC d/b/a Lauderdale Marine Center, hereby intervenes as of right pursuant to *S.D. Fla. Local Admiralty Rule* E(2)(a) and sues: (1) the Defendant M/V OCTOPUSSY, a 1988 Heesen built 143-ft. motor yacht, Jamaica Registry No. JMP15060 her cables, engines, machinery, anchors, chains, apparel, furniture, fittings, tools, pumps, equipment, fixtures, supplies, and all other appurtenances, accessories, additions, improvements, and replacements now or hereinafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "Vessel" herein, etc., including that certain $400,000 held as security in escrow for the release of the M/V OCTOPUSSY pursuant to the Joint Stipulation Consent for Security and Release of Vessel [ECF. 23] and the Court's Order Releasing the M/V OCTOPUSSY [ECF. 24] *in rem* pursuant to Rule C of the Supplemental Admiralty Rules, (2) alternatively, that certain $400,000 held as security in escrow for the release of the M/V OCTOPUSSY pursuant to Rule B of the Supplemental Admiralty Rules, (3) Contessa Marine Research, LLC, and (4) Starboard Yacht Group, LLC, and alleges:

### <u>Nature of the Action and Background Facts</u>

1.      Intervening Plaintiff, SHM LMC, LLC d/b/a Lauderdale Marine Center (hereinafter "LMC"), brings a maritime lien foreclosure action under Title 46 U.S.C. § 31342 to collect money owed for necessaries provided to the *in rem* Defendant, M/V OCTOPUSSY (the "Vessel") to the benefit of its owner, Contessa Marine Research, LLC ("Contessa"), and for breach of contract against Defendant, Contessa, and Cross–Defendant, Starboard Yacht Group, LLC ("SYG"), the disclosed agent for the owner of the Vessel.

2.      LMC operates the 65 acre Safe Harbor Lauderdale Marine Center in Ft. Lauderdale, Florida, the largest yacht building and repair facility in the country, providing boat handling, dockage, dry storage, utilities, and other services to recreational boats and yachts.

3.      At all material times, Steven Ivankovich is the Sole Owner and Manager of Contessa with actual or apparent authority to procure necessaries for M/V OCTOPUSSY.

4.      At all material times, Mr. Ivankovich is the beneficial owner of M/V OCTOPUSSY.

5.      At all material times, Contessa used Diana Sidek as its actual or apparent agent to procure necessaries for M/V OCTOPUSSY.

6.      At all material times, Contessa also used Joe Seinitz as one of its local agents who is authorized to procure necessaries for M/V OCTOPUSSY.

7.      At all times material, *in rem* Defendant, M/V OCTOPUSSY is a Jamaican-Registered (JMP 15060) 1988 Heesen built motor yacht with a builder's number of 7038 and MMSI number of 339904000.

8.      On April 27, 2022, Mr. Ivankovich, in his capacity as Sole Owner and Manager of Contessa, entered into a Boat Handling, Dockage, & Storage Agreement with LMC to procure wet/dry dockage, utilities and other necessaries for M/V OCTOPUSSY. A copy of the signed Boat Handling, Dockage & Storage Agreement ("Boat Handling Agreement") is attached hereto as Exhibit 1.

9.      Mr. Ivankovich also personally guaranteed Contessa and the Vessel's performance obligations under the Agreement.   See sentence directly above Mr. Ivankovich's signature on page 1 of Exhibit 1.[1]

10.      Boat handling, dockage, and utilities (water, electricity) provided to the Vessel are deemed "necessaries" under the general maritime law and 46 U.S.C. § 31342.

11.      M/V OCTOPUSSY arrived at LMC's yard on April 27, 2022 and started receiving necessaries.

12.      After Contessa entered into the Boat Handling Agreement with LMC, on June 10, 2022, Jake Stratmann, the Manager of SYG, sent an email to Jessenya Burrell, LMC's account representative, that directed LMC to send the OCTOPUSSY bills to SYG so the owner, Contessa, could take advantage of SYG's 2022 Resale Certificate and receive the benefit of a state sales tax cap on OCTOPUSSY's refit in Florida.  A copy of SYG's June 10, 2022 email is attached hereto as Exhibit 2.

13.      SYG's June 10, 2022 email to LMC was copied to Contessa's local agent, Joe Seinitz.  See Exhibit 2.

14.      Defendant, Contessa, did not object to or countermand SYG's June 10, 2022 email instruction that directed LMC to send its OCTOPUSSY invoices to SYG for handling and payment.

15.      Put simply, Defendant, Contessa, gave actual or apparent authority to SYG to serve as its payment agent concerning repairs and refitting the Vessel at LMC's facility.  *See* Exhibit 2.   This agreement therefore made both Defendant Contessa and Cross-

---

[1] LMC reserves the right to amend its Verified Intervening Complaint to assert a cause of action against Mr. Ivankovich under his personal guarantee.  LMC is not bringing Mr. Ivankovich into this action at this time because it wants to allow Contessa an opportunity to resolve the matter before doing so.

Defendant SYG liable to LMC for the boat handling, dockage, and utilities (water, electricity) provided to the Vessel.

16.     On October 18, 2022, SYG issued check #9180 in the amount of $45,303.00 payable to LMC to pay part of the balance owed for necessaries provided to the Vessel.

17.     SYG's check #9180 was returned to LMC because SYG did not have sufficient funds in its account.  A copy of SYG's NSF check #9180 is attached hereto as Exhibit 3.

18.     On October 21, 2022, SYG issued check #9186 in the amount of $45,303.00 to LMC as a payment on the Vessel's account.  This check was paid by SYG's bank.

19.     On October 21, 2022, SYG issued check #9187 in the amount of $88,899.40 payable to LMC to pay part of the balance owed for necessaries provided to the Vessel.

20.     SYG's check #9187 was returned to LMC because SYG did not have sufficient funds in its account.  A copy of SYG's NSF check #9187 is attached hereto as Exhibit 4.

21.     On October 25, 2022, SYG issued check #9195 in the amount of $88,899.40 as a payment on the Vessel's account.  This check was paid by SYG's bank.

22.     On December 28, 2022, SYG used an American Express credit card to pay $53,935.00 to LMC as a payment on the Vessel's account.  SYG's credit card payment made on behalf of Contessa and the Vessel was for the necessaries described in the Statement and Invoices attached hereto as Exhibit 5.

23.     On January 17, 2023, SYG used a Bank of America credit card to pay $52,857.36 to LMC as a payment on the Vessel's account.  SYG's credit card payment made on behalf of Contessa and the Vessel was for the necessaries described in the Statement and Invoices attached hereto as Exhibit 6.

24.     On March 16, 2023, SYG used an American Express credit card to pay $59,282.04 to LMC as a payment on the Vessel's account.  SYG's credit card payment made on behalf of Contessa and the Vessel was for the necessaries described in the Statement and Invoices attached hereto as Exhibit 7.

25.     On May 1, 2023, SYG used a Bank of America credit card to pay $60,427.79 to LMC as a payment on the Vessel's account.  SYG's credit card payment made on behalf of Contessa and the Vessel was for the necessaries described in the Statement and Invoices attached hereto as Exhibit 8.

26.     During SYG's tenure as Contessa's payment agent, the Vessel's account was in arrears most of the time.  LMC therefore notified SYG and Contessa that the Vessel's account had to be brought current and a $350,000.00 deposit provided to LMC if the Vessel intended to stay at its facility.

27.     Contessa hired a different agent to correct the tardy payment issue.

28.     Contessa paid LMC $241,000.00 on June 22, 2023 to bring the Vessel's account current and LMC agreed to drop its demand for a $350,000.00 security deposit.

29.     On August 1, 2023, Contessa paid LMC $90,982.26 to LMC for the Vessel's necessaries.

30.     On August 29, 2023, Contessa paid LMC $54,093.00 for the Vessel's necessaries.

31.     On September 1, 2023, SYG filed its Verified Complaint against Contessa and the M/V OCTOPUSSY to foreclose on an alleged maritime lien for necessaries and for breach of maritime contract.  [ECF 1].

32.     On September 6, 2023, M/V OCTOPUSSY was arrested by the U.S. Marshal pursuant to a Warrant of Arrest In Rem issued by the Court Clerk.  [See ECF 15, Marshal's Process Receipt and Return].

33.     LMC communicated with Contessa's agent regarding whether LMC would be paid the balance owed for the Vessel's necessaries and Contessa assured LMC that it would be paid for its services.

34.     On September 13, 2023 SYG and Contessa filed a Joint Stipulation Consent for Security and Release of Vessel pursuant to Admiralty Rule E(5)(c), whereby the Defendants agreed to post security in the amount of $400,000 in lieu of arrest and hold the funds in the IOTA account of Moore and Co. P.A. to release of the Vessel from arrest.  [See ECF 23].

35.     On September 15, 2023 the Court entered an Order releasing M/V OCTOPUSSY from arrest and confirming the Court's jurisdiction over the $400,000 substitute security escrowed in Moore and Co. P.A.'s trust account.  [ECF. 24].

36.     On September 20, 2023, Contessa paid LMC $70,622.01 and on September 21, 2023, Contessa paid LMC $22,495.22, which brought the Vessel's account current.

37.     M/V OCTOPUSSY departed LMC's facility on September 22, 2024.

38.     LMC did not intervene in this action in September 2023 because it did not have cause to do so.  However, as described below, LMC is now compelled to file this

Verified Intervening Complaint to recover damages for necessaries provided to the Vessel.

39.    On November 20, 2023 and November 21, 2023, SYG initiated chargebacks of the $59,282.04 and $53,935.00 American Express credit card payments. LMC's manager and account representative in Fort Lauderdale, did not receive notice of these chargebacks until after the response period passed and American Express allowed the chargebacks.  LMC was not able to oppose the American Express chargebacks and the funds went back to Contessa's agent, SYG.

40.    On December 6, 2023, SYG initiated chargebacks of the $52,857.36 and $60,427.79 Bank of America credit card payments by alleging LMC did not deliver the services.  LMC's manager and account representative in Fort Lauderdale received notice of the requested chargebacks and filed an opposing response that showed the services were in fact delivered.  Bank of America reversed the chargebacks and put the funds back into LMC's account.

41.    On January 12, 2024, SYG initiated second chargebacks of the $52,857.36 and $60,427.79 Bank of America credit card payments by alleging LMC did not deliver the services.  LMC filed an opposing response to SYG's second attempted chargebacks. Bank of America reversed the chargebacks a second time and put the funds back into LMC's account.

42.    On March 6, 2024, SYG initiated third chargebacks of the $52,857.36 and $60,427.79 Bank of America credit card payments by alleging LMC did not deliver the services.  Pursuant to Bank of America's chargeback procedures, BOA withdrew the amount of the requested chargebacks from LMC's account until it determines whether to

allow or reverse the chargebacks.  If Bank of America reverses the chargebacks for the third time, it will deposit the funds back in LMC's account.  As of now, LMC does not have the funds and it is suing to recover them in the event Bank of America does not reverse the chargebacks.

43.    All of the chargebacks are factually meritless and have caused damages to LMC.

44.    As a result of the fraudulent or improper chargebacks, LMC has sustained $226,502.19 in damages (e.g. the amount of the chargebacks) plus $11,356.36 of late fees for unpaid necessaries provided to M/V OCTOPUSSY.

45.    LMC has a preferred maritime lien for $238,483.55 against M/V OCTOPUSSY concerning the necessaries LMC provided to the Vessel and LMC's lien takes priority over any other claim against the $400,000 substitute security escrowed in Moore and Co. P.A.'s trust account, as SYG issued credit card payments on behalf of the owner, Contessa, while the Vessel was located at LMC, LMC permitted the Vessel to leave its facility believing the Vessel's account was paid, both SYG and Contessa, including Mr. Ivankovich, are obligated and promised to pay for these necessities, and then Defendants charged back those payments after the Vessel departed from the United States of America in an effort to deprive LMC of its rightful payments for the necessaries and to try to prevent LMC from exercising its rightful lien and security rights against the Vessel.

## Jurisdiction and Venue

46.    Title 28 U.S.C. § 1331 provides subject matter jurisdiction to this Court because LMC's maritime lien foreclosure action involves a federal question under Title 46 U.S.C. § 31342 of The Commercial Instruments and Maritime Lien Act.

47.     Title 28 U.S.C. § 1333 also provides subject matter jurisdiction to this Court because LMC has a general maritime cause of action to foreclose its maritime lien for necessaries provided to a vessel and breach of maritime contract actions.

48.     *In rem* Defendant M/V OCTOPUSSY is a vessel under Title 1 U.S.C. § 3.

49.     The Court has not issued an order setting a sale date for the M/V OCTOPUSSY or the disbursement of the security.

50.     LMC invokes Federal Rule of Civil Procedure 9(h) and Supplemental Admiralty Rules C and E to foreclose its preferred maritime necessaries lien against the *in rem* Defendant M/V OCTOPUSSY, which is present in this jurisdiction because of the $400,000 substitute security held in Moore and Co. P.A.'s trust account.

51.     LMC also invokes Supplemental Admiralty Rule B to attach and garnish Defendant, Contessa's, $400,000 security located within this District in support of LMC's breach of maritime contract claim against the Vessel Owner.

52.     The Court has personal jurisdiction over the *in personam* Defendants under Florida Statute § 48.193(1)(a).1, § 48.193(1)(a).2, § 48.193(1)(a).6, § 48.193(1)(a).7, and/or §48.193(2).

53.     Title 28 U.S.C. § 1367 provides the Court with supplemental jurisdiction to resolve claims that fall outside the Court's original jurisdiction.

54.     Venue is proper in this Court because the events giving rise to this dispute occurred in Broward County, Florida and Defendants Contessa and SYG have subjected themselves to jurisdiction before this Court by asking the Court to award them relief in this case.

55.     LMC fulfilled or satisfied all conditions precedent for filing this suit.

**Parties**

56.     LMC is a Delaware limited liability company authorized to transact business in the State of Florida and its principal place of business is located at 2001 S.W. 20th Street, Fort Lauderdale, Broward County, Florida 33315.  LMC is the registered owner of the fictitious name "Lauderdale Marine Center."

57.     *In rem* Defendant vessel, M/V OCTOPUSSY is a 1988 Heesen built 143-ft. motor yacht, bearing Jamaica Ship Registry No. JMP15060, and is owned and operated by Defendant, Contessa Marine Research LLC.

58.     Pursuant to the Joint Stipulation Consent for Security and Release of Vessel [ECF 23] and the Court's Order Releasing the M/V OCTOPUSSY [ECF 24], $400,000 is being held as security in escrow, against which LMC makes a claim *in rem* and also a maritime attachment and garnishment.

59.     Defendant, Contessa, is a Delaware limited liability company that maintains its principal place of business outside the State of Florida.

60.     Defendant, Contessa, cannot be found within the Southern District of Florida because it does not have a registered agent to receive service of process in the State of Florida.

61.     Cross-Defendant, SYG, is a Florida limited liability company which has answered and appeared herein represented by counsel.

**Cause of Action I**
**Supplemental Admiralty Rule C *In Rem* Foreclosure of Maritime Lien**

Intervening Plaintiff, LMC, re-alleges and reaffirms paragraphs 1 - 61 and further alleges:

75479470;1

62.     LMC provided necessaries to M/V OCTOPUSSY as described in the Statements and Invoices attached hereto as Exhibits 5 - 8.

63.     Contessa and the Vessel are vicariously or technically liable for the acts of its actual or apparent agent, SYG.

64.     SYG'S chargebacks result in $238,483.55 being owed for the necessaries provided to M/V OCTOPUSSY.

65.     While M/V OCTOPUSSY is no longer in this District, $400,000 substitute security was posted based on the Vessel's value and therefore the *res* is still within the Court's jurisdiction.  [ECF 24].

66.     The maritime necessaries provided to the Vessel occurred within the navigable and territorial waters of the United States and within this District.

67.     LMC's preferred maritime necessaries lien is in the amount of $238,483.55 or such other amount as may be determined by the Court.

68.     Title 46 U.S.C. § 31342 provides LMC a statutory cause of action that enables it to foreclose the maritime necessaries lien against the Vessel (i.e. the 400,000 security) through this *in rem* action.

69.     In addition, LMC has a general maritime law cause of action to foreclose a maritime lien against the Vessel, particularly the security provided to secure the Vessel's release to recover the amount due for necessaries.

70.     LMC is entitled to recover court costs under general maritime law and under the Boat Handling Agreement.

71.     LMC is also entitled to recover pre-judgment interest at the rate of 18 percent per year on the outstanding balance under the terms of the Boat Handling Agreement. *See* Exhibit 1, Section 24.

WHEREFORE, Plaintiff, SHM LMC, LLC, demands the following relief:

(A)     That the Court order the Clerk of Court to issue a warrant of arrest *in rem* for the $400,000 substitute security that represents the M/V OCTOPUSSY and direct the U.S. Marshals Service to serve the warrant on Moore and Co. P.A., which has the substitute security escrowed in its trust account;

(B)     That the Court direct the manner in which LMC shall give notice of this action to the owner, master, ranking officer and/or manager of the *in rem* Defendant Vessel (i.e. substitute security), and to any persons, firms or corporations having an interest therein;

(C)     That the Court order all persons claiming any interest in the Vessel (i.e. substitute security) to appear and answer the matters aforesaid;

(D)     That the Court declare SHM LMC, LLC has a preferred maritime lien for *necessaries* against the Vessel (i.e. substitute security) and that it is a valid and subsisting lien upon the Vessel/security;

(E)     That the Court declare SHM LMC, LLC's preferred maritime *necessaries* lien is superior in interest to all other liens, claims or interests that may be asserted against the Vessel (i.e. substitute security) in this suit;

(F)     That the Court decree all persons, firms and corporations claiming any interest in the Vessel (i.e. substitute security) who fail to intervene in this suit to assert their *in rem* claims are forever barred and foreclosed of all right or equity redemption, or

claim of, in, or to said Vessel;

(G)     That the Court enter judgment in favor of SHM LMC, LLC against M/V OCTOPUSSY (i.e. substitute security) for the outstanding debt owed for the *necessaries* described herein and as accruing prior to the arrest plus pre-judgment interest at the rate of 18% per year, and court costs, including the *custodia legis* expenses;

(H)     That the Court condemn M/V *OCTOPUSSY*, particularly the substitute security, and order it disbursed by Moore and Co, P.A. to pay the *in rem* judgment awarded to SHM LMC, LLC; and,

(I)     For the Court to award SHM LMC, LLC d/b/a "Lauderdale Marine Center" such other and further relief as the Honorable Court deems just and proper.

**Cause of Action II**
**Breach of Maritime Contract Cause of Action against Defendant, Contessa,**
**including Supplemental Admiralty Rule B Attachment of Contessa's Property**
**Which is Located within the Southern District of Florida**

Intervening Plaintiff, LMC, re-alleges and reaffirms paragraphs 1 - 61 and further alleges:

72.     Plaintiff, LMC, sues Defendant, Contessa, for breach of maritime contract and invokes Supplemental Admiralty Rule B for purposes of attaching Contessa's property that may be found within the Southern District of Florida.

73.     Defendant, Contessa, breached its contractual obligations to LMC by authorizing its agent, SYG, to perform chargebacks on credit card payments to LMC after M/V OCTOPUSSY departed from the United States of America.

74.     After the arrest and release of M/V OCTOPUSSY subject to the Joint Stipulation Consent for Security and Release of Vessel [ECF 23] and the Court's Order

Releasing the Vessel [ECF 24], the M/V OCTOPUSSY departed from the United States of America.

75.     However, the Court maintains jurisdiction over the *res* consisting of $400,000 posted as security held in Moore and Co. P.A.'s trust account. [ECF 24].

76.     Contessa posted the $400,000 security as the owner of the M/V OCTOPUSSY.

77.     LMC makes this breach of maritime contract claim against Contessa and invokes Supplemental Admiralty Rule B to attach the $400,000 substitute security for its $238,483.55 damages, court costs, attorneys' fees, and interest.

78.     LMC's breach of maritime contract damages is in the amount of $238,483.55, or such other amount as may be determined by the Court.  See Exhibits 5 - 8.

79.     LMC is entitled to recover court costs under general maritime law and under the Boat Handling Agreement.  See Exhibit 1.

80.     LMC is also entitled to recover pre-judgment interest at the rate of 18 percent per year on the outstanding balance under the terms of the Agreement.  *See* Exhibit 1, Section 24.

81.     LMC is also entitled to recover attorney's fees under Section 27 of the Boat Handling Agreement.  See Exhibit 1.

WHEREFORE, Intervening Plaintiff, SHM LMC, LLC, demands the following relief:

(A)     That the Court order the Clerk of Court to issue a process of attachment and garnishment of the $400,000 substitute security held in Moore and Co. P.A.'s trust account which is currently Defendant, Contessa's, property located within the Southern

District of Florida and direct the U.S. Marshals Service to serve the process of attachment and garnishment on Moore and Co. P.A.;

(B)     That the Court direct the manner in which LMC shall give notice of this action to the Defendant, Contessa, and to any other persons, firms or corporations having an interest therein;

(C)     That the Court order all persons claiming any interest in Defendant, Contessa's, property to appear and answer the matters aforesaid;

(D)     That the Court enter judgment in favor of Intervening Plaintiff, SHM LMC, LLC, against Defendant, Contessa Marine Research, LLC, for the outstanding debt owed for the necessaries described herein plus pre-judgment interest at the rate of 18% per year, attorney's fees, and court costs;

(E)     That the Court order the escrow agent, Moore and Co, P.A., to disburse sufficient funds from the $400,000 held in its trust account to satisfy the judgment awarded to SHM LMC, LLC; and,

(F)     For the Court to award SHM LMC, LLC such other and further relief as the Honorable Court deems just and proper.

**Cause of Action III**
**Breach of Maritime Contract Cause of Action against Cross-Defendant SYG**

Intervening Plaintiff, LMC, re-alleges and reaffirms paragraphs 1 - 61 and further alleges:

82.     LMC and Contessa, on behalf of the M/V OCTOPUSSY, entered into the Boat Handling Agreement.  See Exhibit 1.

83.     On or about June 10, 2022, Cross-Defendant, SYG, adopted the Boat Handling Agreement by instructing LMC to send its bills to SYG for payment.  See Exhibit 2.  As a result, it became both the guarantor as well as also equally and independently contractually obligated under maritime law to pay for those necessities.

84.     Cross-Defendant, SYG, breached the Boat Handling Agreement by making improper and/or fraudulent credit card chargebacks and failing to pay $238,483.55 for necessaries provided to the M/V OCTOPUSSY.  See Section 3 of the Boat Handling Agreement attached hereto as Exhibit 1.

85.     As a direct or proximate result of Cross-Defendant, SYG's, improper or fraudulent chargebacks, Plaintiff, LMC, has sustained damages in the amount of the chargebacks.

86.     Plaintiff, LMC, is entitled to recover 18 percent interest per year on its damages.  (See Exhibit 1, ¶ 27).

87.     Plaintiff, LMC, is also entitled to recover its attorney's fees from Defendant, SYG, pursuant to Section 24 of the Boat Handling Agreement.  (See Exhibit 1, Section 24).

88.     Defendant, SYG, breached the agreement willfully by making the credit card payments under false pretenses and subsequent chargebacks.

89.     The total amount of $238,483.55 remains unpaid, due and owing at the time of this filing.

WHEREFORE, Intervening Plaintiff, SHM LMC, LLC, demands the Honorable Court enter judgment against Cross-Defendant, Starboard Yacht Group, LLC, and award

Plaintiff damages, prejudgment interest, attorney's fees, costs, and such further relief the Court deems proper.

**Cause of Action IV**
**<u>Fraudulent Chargeback Claim against SYG</u>**

90.     Intervening Plaintiff, LMC, re-alleges and reaffirms paragraphs 1 – 61 and further alleges:

91.     SYG intentionally misrepresented that it did not receive LMC's services in initiating chargebacks with American Express and Bank of America.

92.     LMC has sustained $238,483.55 in damages as a direct or proximate result of SYG's misrepresentations in support of its fraudulent chargebacks.

WHEREFORE, Intervening Plaintiff, SHM LMC, LLC, demands the Honorable Court enter judgment against Cross-Defendant, Starboard Yacht Group, LLC, and award Intervening Plaintiff damages, prejudgment interest, and costs.

**Cause of Action V**
**Declaratory Judgment for Equitable Subordination**
**<u>of SYG's Alleged Maritime Lien</u>**

Intervening Plaintiff, LMC, re-alleges and reaffirms paragraphs 1 - 61 and alleges:

93.     This is an action for declaratory relief to resolve justiciable controversies existing between Intervening Plaintiff, LMC, and Cross-Defendant, SYG.

94.     The Court has jurisdiction to resolve the justiciable controversies existing between LMC and SYG under Title 28 U.S.C. § 2201, § 2202, and Rule 57 of the Federal Rules of Civil Procedure.

95.     SYG's payments under false pretenses were made while the M/V OCTOPUSSY was located within this district at the LMC facility, and were made to avoid LMC taking legal action against the Vessel.

96.     After SYG made the credit card payments under false pretenses, M/V OCTOPUSSY was removed from the LMC facility and this District.

97.     SYG then instituted chargebacks on the credit card payments, thus depriving LMC of the ability to itself arrest the Vessel and obtain adequate security.

98.     Pursuant to the Joint Stipulation Consent for Security and Release of Vessel [Dkt. 23] and the Court's Order Releasing the M/V OCTOPUSSY [ECF 24] Contessa posted the $400,000 security as the owner of the M/V OCTOPUSSY, and SYG has made a claim against the $400,000 to secure its claims.

99.     LMC relied on the initial payments made by SYG under false pretenses, and was deprived of the opportunity to arrest the M/V OCTOPUSSY by SYG's actions.

100.    LMC's claim against the $400,000.00 held as substitute security in Moore and Co P.A.'s trust account for the release of the M/V OCTOPUSSY should therefore take priority over SYG's claims, which should be equitably subordinated to LMC's claims.

WHEREFORE, Intervening Plaintiff, SHM LMC, LLC demands the following declaratory relief:

(A)     That the Court declare Starboard Yacht Group, LLC, acted improperly or fraudulently by making credit card charge backs in breach of Section 3 of the Boat Handling Agreement;

(B)     That the Court declare Starboard Yacht Group, LLC's, maritime lien against the $400,000 substitute security is equitably subordinated to SHM LMC, LLC's preferred maritime lien claim against the res; and,

(C)      That the Court declare Starboard Yacht Group, LLC's maritime lien against the $400,000 substitute security is equitably subordinated to SHM LMC, LLC's Supplemental Admiralty Rule B attachment and garnishment of the res.

DATED:  March 29, 2024.

Respectfully submitted,

By:*/s/ Farris J. Martin III*
FARRIS J. MARTIN, III
Florida Bar No. 879916
JAMES W. STROUP
Florida Bar No. 842117
STROUP & MARTIN, P.A.
*Attorneys for Intervening Plaintiff, SHM LMC*
119 Southeast 12th Street
Fort Lauderdale, Florida  33316
Telephone:  (954) 462-8808
Facsimile:   (954) 462-0278
E-mail:  fmartin@strouplaw.com
E-mail:  jstroup@strouplaw.com

VERIFICATION ON FOLLOWING PAGE

## <u>VERIFICATION</u>

Declarant Lazaro Roig declares under penalty of perjury:

1.      My name is Lazaro Roig, I am over twenty-one (21) years old and am the General Manager of SHM LMC, LLC d/b/a "Lauderdale Marine Center" ("LMC").

2.      I read the foregoing Verified Complaint and know the contents thereof. The factual allegations are true to the best of my own knowledge and belief.

3.      In addition, the documents in Exhibits 1 through 8 are true and correct copies of the original documents and records maintained by the LMC.

4.      The sources of my information and the grounds for my belief as to all matters stated in the Verified Complaint are based upon my personal knowledge, my review of LMC' s records and/or interviews of LMC's employees that have knowledge of the services and supplies provided to the Vessel and the invoices submitted to the Owner's representative.

Pursuant to Title 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 29, 2024.

*Lazaro Roig*

_____
Lazaro Roig as General Manager of
SHM LMC, LLC d/b/a "Lauderdale
Marine Center"

75479470;1

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with this Court's CM/ECF docketing system this 29th day of March, 2024 and is being served via CM/ECF to counsel on the Service List shown below.

By:_/s/ Farris J. Martin III_
FARRIS J. MARTIN, III
Florida Bar No. 879916

## SERVICE LIST

Matthew J. Valcourt, Esq.
Valcourt and Associates LLC
850 NE Third Street, Suite 208
Dania, FL.  33004
Tel: (305) 763-2891
Email: mvalcourt@valcourtlaw.com
Counsel for Plaintiff/Cross-Defendant,
Starboard Yacht Group, LLC

Michael T. Moore, Esq.
Caycie Flitman, Esq.
Moore & Company, P.A.
255 Aragon Avenue, 3rd Floor
Coral Gables, FL  33134
Email: michael@moore-and-co.com
Email: cflitman@moore-and-co.com
Counsel for Defendants, M/V Octopussy, _in rem_
and Contessa Marine Research, LLC

75479470;1