**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE**
**DIVISION IN ADMIRALITY**
**CASE NO.: 23-CV-61696-SINGHAL**

STARBOARD YACHT GROUP LLC,
a Florida Limited Liability Company,

Plaintiff/Counter-Defendant,

v.

CONTESSA MARINE RESEARCH LLC,
a Delaware limited liability Company

Defendant/Counter-Plaintiff.

CHARLES JAKE STRATMANN,
individually

________________________________________/

**STARBOARD YACHT GROUP REPLY BRIEF ADDRESSING OUTSTANDING DISCOVERY DISPUTES PER COURT'S JULY 21, 2025, ORDER [DE 226]**

Starboard Yacht Group ("SYG") initiated this litigation in September of 2023 to recover expenses incurred in the renovation and upgrade of Marine Vessel Octopussy which was contracted for various improvements in May of 2022, with Steven Ivankovich, an agent / principal for Contessa Marine Research LLC ("CMR").[1] SYG files this its Reply to CMR's Brief along with a request for an *in-camera* inspection of the redacted documents produced by CMR to date in this matter.

SYG provided in excess of $5 million in goods and services to CMR for which there are outstanding invoices in excess of $2.2 million. SYG has produced bank records, cancelled checks, invoices, and labor records to CMR documenting the work that was done not only on M/V Octopussy, but work provided to CMR for 11 other vessels not at issue in the current litigation. Despite the production of voluminous business records and summaries of those records categorizing all expenses in this matter, CMR still asserts to be unable to understand the expenditure of some $4.5 million in funds authorized by Steven Ivankovich.

The parties have served discovery and to date CMR's responses to SYG's discovery has been wholly unsatisfactory. CMR has deliberately used redactions and assertions of privilege to

[1] As will be discussed *infra*, it appears that Anthony D. Ivanovich is the sole member / owner of CMR, as reflected in CMR's Delaware LLC Agreement dated June 8, 2021. However, due to Defendant's incomplete document production, SYG is still investigating the issue of ownership and the relationship between Anthony and Steven.

prevent meaningful discovery from being produced that is vital to SYG's preparation of its case. Despite SYG having spent in excess of $100,000 to date producing detailed records of the work provided to CMR, not a single deposition has been set in this matter. SYG is being prejudiced in the preparation of its case by an unending barrage of dilatory motions that do nothing to advance the case. It is SYG's goal to begin setting depositions in this matter in order to actually prepare this case for trial on the schedule provided by the Court.

## I. CMR Asserts an Inability to Understand how $4.5 MM was Expended but has Failed to even Review the Answer Provided.

As an initial matter, CMR purports to be unable to determine how the $4.5 million in payments authorized by Steven Ivankovich was spent in relationship to the repairs undertaken at the direction of Steven Ivankovich. This assertion clearly demonstrates CMR's failure to even do a cursory review of the documents and interrogatory answers received. A detailed response to interrogatory number 9 was provided to CMR and included not only individual repair orders, but check numbers relating to the same and attested to by Brian Kenny the CFO for Plaintiff. The exhibit is 151-page detailed explanation of each item comprising the $4.5 million in payments. *See*, Exh. 1. By way of example, Repair Order ("RO") 40534, Main Engine Evaluation, comprised $7,900.54. The vendor was Mendol who was paid by two checks (check #1182 and #1278) paid on two separate dates. SYG has provided its entire banking records from Bank of America such that there can be no argument that CMR not only has an explanation of the costs associated with the repair order but the actual payment to the vendor Mendol.

That CMR asserts to the Court that SYG "still has not produced documents accounting for the $4.5 million it received", is patently false and is just one example of a complete failure by CMR to do even the most cursory review of the plethora of information it has been provided. Rather than go through each repair order and match them to the vendor and the payments, CMR asserts that there is information missing without even attempting to explain what it purports to be missing. This compilation of information was created by SYG at great expense to thoroughly explain every aspect of the $4.5 million and since CMR has also provided the unredacted bank records of SYG CMR can examine each repair order in detail. CMR, clearly has not undertaken the task of even reviewing the information it has in its possession, but instead asserts without any proof that it is missing information and does not understand SYG's record keeping system. However, at no point has CMR even attempted to depose Brian Kenny, the SYG employee in the best position to explain the 151-page document that thoroughly documents the $4.5 million.

SYG has spent in excess of $100,000 in responding to CMR's discovery requests and providing information in exacting detail only to receive a pleading asserting that CMR does not understand how the monies were spent. This case is at its heart an accounting case and CMR will need to retain an accounting expert to review the documents produced and explain to CMR the meaning of the documents it has received. SYG has produced the documents in a usable format that explains every item of the monies expended on the various vessels that are at issue in this case.

CMR's failure to even review the information it has received severely hampers the progress of this case.

Perplexingly, CMR asserts that "[k]ey financial documents, such as bank reconciliation statements and data certified by CFO Brian Kenny . . . remain missing." However, as Exhibit 1 clearly demonstrates, CMR has a detailed explanation, including check numbers and vendor invoices, of the expenditure of funds in this matter. CMR makes no effort to explain either to the Court or SYG exactly what it believes to be deficient in the exceptionally detailed answer provided.

As relates to the "source documents," SYG has produced its bank records which contains all the checks negotiated through SYG's account to pay the various vendors at issue in this case. CMR makes no effort to either acknowledge its receipt of the bank records or to provide any rationale for why it is unable to understand what it has received from Bank of America. Contrary to CMR's assertions, SYG has produced not only a detailed response as to how the $4.5 million was spent, but also the banking records demonstrating the cancelled checks. SYG has no meaningful way to provide any greater detail than it has to date.

## II. CMR Takes Issue with SYG's Folder Structure Which is Based on SYG's Financial Records System.

Next CMR's asserts it does not understand SYG's record keeping system. SYG produced its files in accordance with FRCP 34(b)(2)(E)(i), which allows a responding party to produce documents in the form they are kept in the ordinary course of business. While CMR choses to categorize the production as "disorganized," it has taken not the slightest effort to understand SYG's record keeping system. Undersigned has made repeated offers to CMR to set the record's custodian for deposition such that any misunderstandings can be resolved. SYG's system of records keeping was not designed to CMR's counsel's understanding of the case, but instead to the daily requirements necessary to conduct extensive marine repairs. *Hallmark v. Cohen & Slamowitz, LLP,* 302 F.R.D. 295, 299 (W.D.N.Y. 2014)("It is basic that in responding to a document production request, pursuant to Fed.R.Civ.P. 34(a) . . . 'a party is not required to create documents meeting the document requests, only to produce documents already in existence.' (citing Baicker-McKee Janssen Corr, *Federal Civil Rules Handbook*, Thompson Reuters (2014) at 889)).

In the instant case, SYG has produced documents from its record keeping system as it is maintained in the normal course of business. *Barnes v. District of Columbia*, 281 F.R.D. 53, 55 (D.D.C. 2012)("Parties served with discovery are not generally required to create documents in order to respond to . . . discovery, since Rule 34 of the Federal Rules of Civil Procedure only requires production of documents already in existence.").

CMR's inability to understand the recordkeeping system of SYG does not allow CMR to compel production of documents in a format convenient to CMR. *Barnes*, 281 F.R.D. at 55. CMR must take the records as they exist at the time of production. The unending motion practice relating to SYG's business records are at best dilatory and are prejudicial to the advancement of this case.

## III. CMR Claims to be unable to understand RO 40541.

CMR makes the assertion that "RO 40541 includes only employee time records." Repair Order 40541 is attached hereto as Exhibit #2. The repair order was to create 3D technical drawings, compile data and use measurements to create the design. Obviously, the repair order contains only labor hours because the repair order consisted only of creating CAD drawings for the particular project and nothing more. The entire cost consists of labor only. Rather than review the information provided, CMR leaped to the conclusion that information was missing. This is a typical example of the rather cursory review of the production that CMR undertakes when asserting that information is missing. This repair order consisted only of labor so the folder in question contained the hours expended to create the drawings and nothing else since there was nothing else to the job.

This repair order clearly demonstrates the problem SYG encounters in providing discovery responses to CMR. CMR fails to even make a cursory review of the documents provided and then makes an unsupported demand for additional information where none exists based on the nature of the repair order itself. While it is understandable that CMR does not understand the fundamentals of marine repair, that is no excuse to engage in extended motion practice as opposed to deposing a corporate representative that can easily dispel such fundamental misunderstandings. Why CMR did not examine the text of the repair order before asserting the response is deficient is unclear to SYG, but it is clearly a distraction from preparing this case for trial.

## IV. CMR Claims to be unable to understand the method of payment for RO 40539.

The folder for repair order 40539 contains the paid invoice for the repair order. The invoice clearly demonstrates that it was paid on March 9, 2023. *See*, Exhibit 3. The third page of the invoice clearly shows the credit card number used to pay the invoice. Again, CMR has not made even the most cursory attempt at reviewing the information provided to obtain the answers to its own question. SYG has produced the document that answers the question of the payment method and the date of payment.

## V. CMR Claims to be unable to understand the Answer to Interrogatory 12.

CMR makes absolutely no attempt to explain what in the answer to interrogatory 12 is unclear. Plaintiff has expended great time and money on providing responses to the discovery. Since there is nothing in the brief that explains what CMR does not understand, it is impossible to respond.

## VI. CMR's Redacted Documents are not Responsive to the Outstanding Discovery

CMR's response to discovery has been wholly unresponsive. The Documents produced are so heavily redacted as to be wholly insufficient in terms of the discovery response. *See* Exhibit 4. SYG is unable to adequately prepare for depositions without a complete production of the relevant information. The Court has the authority to order an in-camera inspection to determine the broad application of privilege asserted by CMR. *Bridgewater v. Carnival Corp.*, 286 F.R.D.

636, 639 (S.D.Fla. 2011)("The party claiming a privilege has the burden of proving its applicability")(citing *Adelman v. BSA*, 276 F.R.D. 681 (S.D.Fla.2011)); *In re Air Crash Bear Cali, Columbia*, 959 F.Supp. 1529, 1532 (S.D.Fla.1997)("the party seeking the privilege has the burden of establishing all of its essential elements"); *Swearingen v. Progressive Express Ins. Co.* No. 6:24-CV-2328_PGB-LHP (M.D.Fla.2025)(granting in part in-camera inspection).

Absent, an in-camera inspection of the materials that CMR is asserting a privilege over, SYG is severely prejudiced in its prosecution of this matter. One of the major issues in this case is the communications between the principles of the parties. The blanket assertion of privilege in this case makes it impossible for SYG to provide a full picture of the nature of the communications between the parties.

Finally, while SYG was led to believe through the entirety of this litigation that Steven Ivankovich was the true party in interest, SYG has recently independently uncovered documents that indicate that Anthony Ivankovich is the true party in interest in this litigation. *See*, Exhibit 5. This fact is important since the Receiver Action in Illinois is related to Steven Ivanovich, not Anthony Ivnakovich. Establishing the issue of ownership will be germane as to whether the Illinois Receiver has standing in this matter and whether there is a need to join an indispensable party. Requiring CMR to provide unredacted documents may well lead to discoverable evidence germane to this issue.

**WHEREFORE,** Starboard Yacht Group LLC requests that this Court enter an order denying the relief request by Contessa Marine Research LLC and conducting an in-camera inspection of the documents over which Contessa Marine Research LLC is asserting a privilege, award attorney's fees and sanctions and for such other and further relief as the Court deems just ad proper.

Dated: August 13, 2025

Respectfully submitted,

**Hutchinson Law Firm, PLLC**
Counsel for Starboard Yacht Group, LLC
8461 Lake Worth Road, Suite 491
Lake Worth, FL 33467-2474

s/ Phillip H. Hutchinson
Phillip H. Hutchinson, Esq.
Fla. Bar. No 0137170