**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**Case No.: 0:23-cv-61696-AHS**

FILED BY VB D.C.
OCT 16 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

STARBOARD YACHT GROUP, LLC, et al.,
Plaintiffs / Counter-Defendants,
v.
M/V OCTOPUSSY, CONTESSA MARINE RESEARCH LLC, et al.,
Defendants / Counter-Plaintiffs.

**COUNTER-DEFENDANT CHARLES JACOB STRATMANN'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e) (INDIVIDUAL CAPACITY ONLY)**

Counter-Defendant Charles Jacob Stratmann, appearing pro se solely in his individual capacity (and not on behalf of Starboard Yacht Group, LLC), respectfully moves under Federal Rule of Civil Procedure 59(e) to alter or amend the Order of Final Judgment entered September 18, 2026 (D.E. 338) and the underlying Findings of Fact and Conclusions of Law / Order Closing Case entered September 15, 2026 (D.E. 337) to the extent they impose personal liability and damages against Stratmann individually. This Motion is timely filed on October 16, 2026, the twenty-eighth day after entry of D.E. 338, and tolls the time to appeal under Federal Rule of Appellate Procedure 4(a)(4)(A)(iv) until entry of the order disposing of this Motion. Because Counter-Defendant suffered an exigent five-hour loss of electrical power due to a Florida Power & Light ("FPL") service disconnection on October 16, 2026 while preparing and printing this filing against the non-extendable twenty-eight-day deadline, Counter-Defendant expressly reserves the right — and requests fourteen (14) days' leave — to file an authenticated record-pinpoint supplement prior to the Court's ruling.

## I. EXACT SCOPE OF INDIVIDUAL RELIEF, ARITHMETIC RECONCILIATION, & FINDING-TO-FINDING MATRIX

1. D.E. 337 and D.E. 338 impose two overlapping personal-liability figures against Stratmann individually: (a) $4,270,739.41 in direct personal tort liability (D.E. 337 at 39), and (b) $5,403,414.94 in personal alter-ego liability for the full contract judgment entered against Starboard Yacht Group, LLC (D.E. 337 at 23–24, 38–39).

2. Those two figures differ by $1,132,675.53. Specifically, the three components included in the $4,270,739.41 personal tort award ($3,027,994.72 + $1,016,242.50 + $226,502.19 = $4,270,739.41) plus the two third-party vendor items that D.E. 337 at 39 & n.21 expressly excluded from personal tort liability ($786,174.43 for Seakeeper and $346,500.00 for Voith = $1,132,674.43) total $5,403,413.84 against the $5,403,414.94 alter-ego judgment ($1.10 arithmetic difference):

| **Finding ID** | **Challenged Finding in D.E. 337 / D.E. 338** | **Amount** | **Motion Ground** | **Docket / Accounting Source** | **Trial Transcript Page:Line & Speaker** | **Requested Relief** |
|---|---|---|---|---|---|---|
| F1 | Stratmann "failed to maintain or produce a reliable open-book accounting" (D.E. 337 at 12, 38) | $3,027,994.72 | Ground A & Ground C | D.E. 237 (filed 08/27/2025: 151pp CFO Brian Kenny accounting of $4,504,641.18 across 156 repair orders showing $0.00 unaccounted; pp. 72–73) | Tr. 62:17–21 (THE COURT / MR. STRATMANN); Tr. 121:1–6 (THE WITNESS Ivankovich); Tr. 127:13–21, 128–130 (THE COURT) | Vacate $3,027,994.72 personal award or reopen record to reconcile against D.E. 237 |
| F2 | Single-vessel incoming wire schedule proves $3,027,994.72 deficit (D.E. 337 at 12, 18–19) | $3,027,994.72 | Ground B & Ground F | D.E. 288-1 (Burell default aff.); D.E. 308–309 (Ex. D-7 filed 02/23/2026); D.E. 237 at p. 4 ($83,058.83 Cobia) & pp. 125–126 ($20,450 Cobia invoice marked "DEPOSIT: Joe Octopussy") | Tr. 12 (MS. BISHOP: Burell absent); Tr. 72:16–25 (THE WITNESS Ivankovich: 8 other boats); Tr. 122:20–123:23 (THE WITNESS / THE COURT: Cobia DC33) | Vacate or deduct multi-vessel payments and cross-booked vessel charges |
| F3 | Morning-of-trial exhibits admitted as unobjected after pretrial | $3,027,994.72 | Ground F | D.E. 262 (cutoff); D.E. 308–309 (filed 02/23/2026 | Tr. 7:14–20 (THE COURT); Tr. 8:8–12 (MR. STRATMANN); Tr. 76:21–77:2 | Vacate findings resting on D.E. 308–309 or grant |

| | | | | | | |
|---|---|---|---|---|---|---|
| | window expired (D.E. 337 at 12, 18–19, 38) | | | morning of trial); D.E. 316 | (THE COURT); Tr. 95:19–22 (MR. STRATMANN / MS. BISHOP); Tr. 100:10–13, 127:13–19, 131:9–15 (THE COURT) | focused evidentiary reconciliation |
| F4 | Direct vendor payment by Contessa to FDDA for MTU engines awarded as personal tort (D.E. 337 at 39) | $1,016,242.50 | Ground E.1 | D.E. 337 at 39 & n.21 ("paid directly by Contessa Marine to FDDA for engines that Contessa Marine has yet to receive") | Tr. 43–53, 85–86 (THE WITNESS Ivankovich); Tr. 130 (MS. BISHOP) | Vacate / deduct $1,016,242.50 from both $4,270,739.41 tort and $5,403,414.94 alter-ego awards |
| F5 | SHM LMC credit-card chargebacks awarded to Contessa despite prior SHM LMC judgment (D.E. 337 at 18–19, 39) | $226,502.19 | Ground E.2 | D.E. 94 ¶¶ 12–14, 22–25, 91 & Ex. 2; D.E. 237 at 72–73 & Ex. J; D.E. 244 (09/24/2025 Order); D.E. 268 (01/13/2026 Final Judgment) | Docketed judicial orders & verified intervenor pleadings on this docket (D.E. 94, 244, 268) | Vacate / deduct $226,502.19 to prevent double recovery on the same four chargebacks |
| F6 | Personal alter-ego liability for full contract judgment including non-tortious vendor items (D.E. 337 at 23–24, 38–39 & n.21) | $5,403,414.94 (incl. $1,132,674.43 Seakeeper/Voith) | Ground D | Fla. Stat. § 605.0304; Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114 (Fla. 1984); D.E. 337 at 23–24, 39 & n.21 | D.E. 337 legal conclusions at pp. 23–24, 39 & n.21 | Vacate $5,403,414.94 personal alter-ego liability or at minimum deduct $1,132,674.43 |

3. Stratmann seeks: (i) primary relief vacating the $5,403,414.94 alter-ego personal liability finding (Ground D) and vacating the $4,270,739.41 personal tort award (Grounds A, B, C, E, and F); and (ii) in the alternative, recalculation of the individual judgment by deducting the

$1,016,242.50 FDDA direct payment (Finding F4), the $226,502.19 SHM LMC chargeback overlap (Finding F5), the $1,132,674.43 Seakeeper/Voith vendor items excluded from personal tort liability at D.E. 337 n.21 (Finding F6), and the $3,027,994.72 "unaccounted monies" figure (Findings F1–F3).

**II. SIX RECORD-PINNED GROUNDS UNDER RULE 59(e)**

Relief under Rule 59(e) is appropriate to correct manifest errors of law or fact and to prevent manifest injustice. See Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007); Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985).

**A. Record-Completeness and Attribution Error Regarding Finding F1 ("$3,027,994.72 Unaccounted Monies," D.E. 337 at 12, 38 vs. D.E. 237)**

4. D.E. 337 states that Stratmann "failed to maintain or produce a reliable open-book accounting" (D.E. 337 at 12, 38) and awards $3,027,994.72 as "unaccounted monies."

5. Nearly six months before the February 23, 2026 bench trial, on August 27, 2025, Starboard Yacht Group, LLC filed on the docket its Verified Supplemental Response to Interrogatory No. 9 (D.E. 237), containing a 151-page line-by-line accounting of $4,504,641.18 across 156 repair orders certified by Chief Financial Officer Brian Kenny as showing $0.00 unaccounted.

6. While a docketed discovery filing is distinct from an admitted trial exhibit (Tr. 62:17–21, THE COURT), D.E. 337 contains no citation to D.E. 237, CFO Brian Kenny, or the August 27, 2025 Verified Supplemental Response, and instead cites an earlier discovery report (D.E. 233) entered before D.E. 237 was evaluated on the merits — even though D.E. 237 (at pp. 72–73) also documented that underlying LMC invoice gaps stemmed in part from records Contessa's representatives had not supplied to the accountants. Entering a $3,027,994.72 personal "unaccounted monies" award without addressing the docketed 151-page accounting at D.E. 237 is a manifest error of fact and calculation.

**B. Reliance on a Default-Judgment Affidavit (D.E. 288-1), a One-Sided Deposit Schedule Filed the Morning of Trial (D.E. 308–309), and an Unreconciled Multi-Vessel Payment Universe (Finding F2: Tr. 12, 72:16–25, 122:20–123:23; D.E. 237 pp. 4, 125–126)**

7. D.E. 337's damages calculation cites the Affidavit of Neil Burell (D.E. 288-1, cited at D.E. 337 at 12, 18–19), which had been submitted in support of default judgment against the corporate entity Starboard Yacht Group, LLC (D.E. 287–288; D.E. 300) and objected to by

Stratmann (D.E. 289). At the outset of the February 23, 2026 bench trial, Contessa's counsel informed the Court that Mr. Burell "was called to trial in another matter" and would not appear (Tr. 12, MS. BISHOP; see also Tr. 131:9–15, THE COURT).

8. Moreover, Contessa's trial exhibits — including its one-sided deposit schedule (Exhibit D-7, listing incoming wires without the vendor-disbursement side) — were filed on the docket on the morning of trial, February 23, 2026 (D.E. 308, D.E. 309). During cross-examination, Contessa's corporate representative (Steven Ivankovich) testified under oath that Contessa's wire composite "only reflects the wires made specifically for the Octopussy project" and that "[t]here are additional wires paid to Starboard and Mr. Stratmann for other boats that he did work on as well," spanning eight other vessels (Tr. 72:16–25, THE WITNESS).

9. The trial transcript further illustrates this multi-vessel attribution issue on a specific non-Octopussy vessel: at Tr. 122:20–123:23, Contessa's corporate representative admitted traveling to the Bahamas on a 33-foot Cobia DC33 ("We were on a Cobia DC33," Tr. 122:25, THE WITNESS) on which Starboard replaced a factory-installed Seakeeper unit (Tr. 123:4–7, THE WITNESS), while denying individual payment ("Did I individually pay for that boat? No.", Tr. 123:17–18, THE WITNESS; see also Tr. 123:10–12, THE COURT). Yet the docketed accounting at D.E. 237 documents $83,058.83 in Cobia applied payments inside the consolidated ledger (D.E. 237 at p. 4) as well as a $20,450.00 Admiral Canvas Cobia cushion invoice marked "DEPOSIT: Joe Octopussy" (D.E. 237 at pp. 125–126). D.E. 337 does not reconcile those multi-vessel payments and cross-booked vessel expenses against the single-vessel deposit schedule before attributing a $3,027,994.72 deficit to Stratmann personally.

**C. Material Impact of Closing the Evidentiary Record Fifteen Minutes After the Lunch Recess While Counter-Defendant Retrieved D.E. 237 (Finding F1 & F3: Tr. 62:17–21, 94, 127:13–21, 128–130; D.E. 316)**

10. During the morning trial session, the Court asked Stratmann for the docket entry number of the 151-page CFO accounting declaration, and Stratmann stated, "I will find it and get right back to you" (Tr. 62:17–21, THE COURT / MR. STRATMANN). At 12:52 p.m., the Court recessed for lunch until 2:07 p.m. ("Let's break for lunch. We will come back in an hour and 15 minutes and then we will continue on," Tr. 127:18–21, THE COURT; see also Tr. 94).

11. Court reconvened at 2:12 p.m., and approximately fifteen minutes later — while Stratmann was delayed retrieving and printing the D.E. 237 accounting materials requested during the morning session — the Court closed the evidentiary record, while expressly stating on the record that it would "consider whatever motion he might file" (Tr. 128–130, THE COURT; prompt post-trial explanation filed at D.E. 316). Rather than seeking to retry tactical decisions, Stratmann respectfully invokes the Court's reservation at Tr. 130 to correct the resulting findings in D.E. 337 that proceeded as if no accounting existed.

**D. Manifest Error of Law in Piercing the Veil of a Florida LLC Without Applying Florida's Strict Three-Prong Standard Under Dania Jai-Alai Palace, Inc. v. Sykes (Finding F6: D.E. 337 at 23–24, 38–39 & n.21)**

12. D.E. 337 imposed $5,403,414.94 in personal alter-ego liability by applying a generalized federal common-law veil-piercing standard (D.E. 337 at 23–24, citing East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864–65 (1986), Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23 (2004), and Willis v. Royal Caribbean Cruises, Ltd., 77 F.4th 1332, 1338 (11th Cir. 2023)).

13. As D.E. 337 recognized in quoting Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum, 749 F. App'x 765, 770 (11th Cir. 2018), "[t]here is no uniform standard test under federal common law" for alter-ego liability, and Willis confirms that maritime courts apply state law where no entrenched federal maritime rule governs. Because Starboard Yacht Group, LLC is a Florida limited liability company governed by the Florida Revised Limited Liability Company Act (Fla. Stat. § 605.0304) and all shoreside billing and accounting occurred in Broward County, Florida, the internal-affairs doctrine and maritime gap-filling principles require application of Florida's strict three-prong veil-piercing standard under Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1119–21 (Fla. 1984). Under Dania Jai-Alai, mere commingling or contested recordkeeping does not pierce the veil absent proof that the LLC was organized or used to mislead creditors for a fraudulent purpose proximately causing the specific loss — and cannot convert the $1,132,674.43 in third-party Seakeeper ($786,174.43) and Voith ($346,500.00) vendor items (which D.E. 337 at 39 & n.21 held were not personal tortious misconduct by Stratmann) into personal liability.

**E. Internal Contradiction on the $1,016,242.50 FDDA Direct Vendor Payment (Finding F4: D.E. 337 at 39 & n.21) and Double Recovery on the $226,502.19 SHM LMC Chargebacks (Finding F5: D.E. 94, 244, 268)**

14. Finding F4 — The $1,016,242.50 FDDA Engine Payment: D.E. 337 excluded $786,174.43 (Seakeeper) and $346,500.00 (Voith) from personal tort liability because third-party vendor non-delivery did not constitute personal conversion by Stratmann (D.E. 337 at 39 & n.21), yet simultaneously awarded $1,016,242.50 against Stratmann personally for MTU engines that D.E. 337 itself states were "paid directly by Contessa Marine to FDDA for engines that Contessa Marine has yet to receive" (D.E. 337 at 39; see also Tr. 43–53, 85–86, THE WITNESS; Tr. 130, MS. BISHOP). Under the rule applied in footnote 21 of D.E. 337, funds paid directly by Contessa to third-party vendor FDDA for engines still held by FDDA cannot be awarded as personal tort damages against Stratmann.

15. Finding F5 — The $226,502.19 SHM LMC Chargeback Overlap: D.E. 337 awarded Contessa $226,502.19 for four Lauderdale Marine Center ("LMC") credit-card chargebacks ($53,935.00 + $52,857.36 + $59,282.04 + $60,427.79 = $226,502.19; D.E. 337 at 18–19, 39). On this very docket, Intervenor Plaintiff SHM LMC, LLC sued on those exact four chargebacks (Verified Intervenor Complaint, D.E. 94 ¶¶ 12–14, 22–25, verifying under penalty of perjury that the LMC invoices were billed under SYG's resale certificate with Contessa's knowledge), entered into a $238,483.55 settlement ($226,502.19 plus interest, D.E. 94 ¶ 91; D.E. 237 at 72–73 & Ex. J), obtained this Court's September 24, 2025 enforcement order for the remaining $119,233.55 balance (D.E. 244), and obtained Final Judgment in favor of SHM LMC on January 13, 2026 (D.E. 268, pursuant to D.E. 266). Awarding the same $226,502.19 chargeback sum to Contessa without offset or interpleader protection subjects the same four chargebacks to two judgments on the same docket.

**F. Documented Filing-Access Constraints, Late-Disclosed Trial Materials, and the Lost Opportunity To Test the Evidence Underlying Identified Findings (Finding F3: Tr. 7–8, 76–77, 94–100, 120–121, 127–131; D.E. 308–309)**

16. Documented filing-access constraints, late-disclosed trial materials, and the abbreviated opportunity to obtain and present requested accounting records materially affected Counter-Defendant's ability to test the evidence underlying Findings F1 through F5.

17. Following withdrawal of counsel, Counter-Defendant's pro se CM/ECF e-filing registrations (submitted November 10, 2025 and January 8, 2026) did not result in active electronic filing access; a January 28, 2026 inquiry to the CM/ECF helpdesk bounced, and on February 9, 2026 the Clerk's office instructed Counter-Defendant in writing that his pro se submissions "must be conventionally filed… paper format." After an attempted paper filing on February 13, 2026 encountered a courthouse closure (contemporaneously noticed by email to counsel that evening), Counter-Defendant hand-delivered and email-served his paper submissions on February 18, 2026.

18. Meanwhile, Contessa's trial exhibits — including Exhibits D-1, D-7, and D-8 — were not filed on the docket until the morning of trial, February 23, 2026 (D.E. 308, D.E. 309), thirty-eight days after the pretrial deadline (D.E. 262) had expired. When trial began, the Court observed: "Contessa listed a series of witnesses and a series of exhibits. You listed no witnesses and no exhibits. You also didn't object to any of their exhibits, not one" (Tr. 7:14–18, THE COURT), and Counter-Defendant stated on the record that he "wasn't allowed to bring any witnesses or evidence" (Tr. 8:8–12, MR. STRATMANN).

19. When Counter-Defendant interposed an objection at trial to an exhibit lacking dates ("I'm talking about on the billing that he is referencing... Right, but there's no -- okay," Tr. 76:15–20, MR. STRATMANN), the Court ruled from the bench: "It's a little late to object. I mean, these were -- there was a time to object to all of these and you waived them all" (Tr. 76:21–77:2, THE COURT). Because the pretrial objection window had expired before D.E. 308 and D.E. 309 were docketed on the morning of trial, Counter-Defendant had no window to lodge record-specific objections before trial. During the examination of Steven Ivankovich, Counter-Defendant — cross-examining from exhibits he had first seen that morning — asked "What is this exhibit again?" (Tr. 95:19, MR. STRATMANN; MS. BISHOP: "D-7, I believe," Tr. 95:20; see also Tr. 100:10–13, THE COURT: "you want to get on their computer and get into their exhibits"; Tr. 127:16–17, MR. STRATMANN: "I didn't get the memo for the exhibit list. I was told that I have none"), while Ivankovich characterized the 151-page CFO accounting (D.E. 237) as a "fabrication" ("I have seen that fabrication many times, yes," Tr. 121:2, THE WITNESS) — the very document the Court had asked Counter-Defendant to identify by docket number at Tr. 62:17–21.

20. At the close of the abbreviated afternoon session, the Court admitted Contessa's exhibits as a class on the ground that "[n]one of those exhibits have been objected to. They can all come in" (Tr. 131:11–12, THE COURT). Because D.E. 337's damages findings rest directly on exhibits docketed the morning of trial (D.E. 308–309) and on the absence of the D.E. 237 accounting that Counter-Defendant was retrieving during the recess (Tr. 128–130), Rule 59(e) relief is warranted to prevent manifest injustice.

## III. RESERVATION OF RIGHT TO FILE AUTHENTICATED RECORD-PINPOINT SUPPLEMENT DUE TO EXIGENT OCTOBER 16, 2026 FIVE-HOUR FPL POWER DISCONNECTION HARDSHIP

21. On Friday, October 16, 2026 — the twenty-eighth and final day permitted under Fed. R. Civ. P. 59(e) and 6(b)(2) to file a motion to alter or amend the September 18, 2026 Final Judgment (D.E. 338) — Counter-Defendant experienced an involuntary five-hour loss of electrical power resulting from a Florida Power & Light ("FPL") disconnection at his residence/workspace, interrupting computer, network, and printing access and forcing a rushed final assembly and courthouse counter delivery to meet the statutory deadline.

22. Once a Rule 59(e) motion is timely filed within the twenty-eight-day window, the District Court retains jurisdiction over the judgment and possesses discretion to permit the movant to amend, clarify, or supplement the timely motion before the Court rules on it. See Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1271–72 (11th Cir. 2006) (holding that where a Rule 59(e) motion is timely filed, the district court has discretion to consider amended or supplemental grounds raised prior to disposition of the motion).

23. Counter-Defendant does not seek to expand this Motion into new collateral theories; rather, Counter-Defendant expressly reserves the right — and respectfully requests fourteen (14) days' leave while this timely Rule 59(e) Motion remains pending — to file a focused authentication supplement attaching native correspondence headers, certified docket extracts, and any clerical corrections necessitated by today's five-hour FPL power disconnection and rushed counter filing.

## IV. RELIEF REQUESTED

WHEREFORE, Counter-Defendant Charles Jacob Stratmann, solely in his individual capacity, respectfully requests that the Court enter an Order pursuant to Federal Rule of Civil Procedure 59(e):

1. Altering or amending the September 15, 2026 Findings of Fact and Conclusions of Law / Order (D.E. 337) and the September 18, 2026 Order of Final Judgment (D.E. 338) solely as to Charles Jacob Stratmann individually;

2. Vacating the $5,403,414.94 personal alter-ego liability finding (Finding F6) and the $4,270,739.41 personal tort award (Findings F1–F5) as to Stratmann individually, or in the alternative recalculating the individual judgment by eliminating: (a) the $1,016,242.50 FDDA direct vendor payment (Finding F4); (b) the duplicative $226,502.19 SHM LMC chargeback award (Finding F5, D.E. 94, 244, 268); (c) the $1,132,674.43 in Seakeeper ($786,174.43) and Voith ($346,500.00) vendor items excluded from personal tort liability at D.E. 337 n.21 (Finding F6); and (d) the $3,027,994.72 "unaccounted monies" component upon consideration of D.E. 237 and multi-vessel payment attribution (Findings F1–F3, Tr. 72:16–25, 122:20–123:23);

3. Granting Counter-Defendant fourteen (14) days' leave to file a focused record-authentication supplement while this timely October 16, 2026 Rule 59(e) Motion remains pending, in light of the five-hour FPL power disconnection hardship on October 16, 2026 (Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1271–72 (11th Cir. 2006)); and

4. Granting such other and further relief as is just and proper.

**LOCAL RULE 7.1(a)(3) CERTIFICATE OF CONFERRAL (COMPLETE ONLY WITH ACTUAL FACTS AT SIGNING)**

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), Counter-Defendant Charles Jacob Stratmann states as follows regarding conferral with counsel of record for Contessa Marine Research LLC — Brooke Bishop, Esq. and James H. Perry II, Esq. (Perry Maritime Law Group, brooke.bishop@maritimeattorneys.com, perry@maritimeattorneys.com, perry@yachtlawyer.com), and Michael T. Moore, Esq. and Caycie Flitman, Esq. (Moore & Company, P.A., michael@moore-and-co.com, cflitman@moore-and-co.com):

On October 16, 2026 at _____:_____ a.m./p.m. ET, Counter-Defendant contacted opposing counsel by electronic mail (and/or telephone at ________________________) regarding the relief requested in this Rule 59(e) Motion:

( ) Opposing counsel advised that Contessa Marine Research LLC opposes the relief requested herein; OR

( ) Because October 16, 2026 is the non-extendable twenty-eighth day under Fed. R. Civ. P. 59(e) and 6(b)(2) (compounded by a five-hour FPL power disconnection on October 16, 2026), Counter-Defendant transmitted the conferral request prior to filing and, as of _____:_____ a.m./p.m. ET when this Motion was signed for delivery to the Clerk, opposing counsel had not yet responded. Counter-Defendant will promptly supplement this Certificate upon receipt of counsel's response.

Dated: October 16, 2026

Respectfully submitted,

______________________________________________

Charles Jacob Stratmann, Counter-Defendant, Pro Se (Individually)

545 NE 17th Avenue

Fort Lauderdale, FL 33301

Telephone: (954) 873-8546

Email: jake@starboardyacht.com

**CERTIFICATE OF SERVICE (COMPLETE AND SIGN ONLY AT ACTUAL FILING / SERVICE)**

I certify that on October ____, 2026 at _____:_____ a.m./p.m. ET, following delivery of the signed original of this Motion to the Clerk of the Court (United States District Court, Southern District of Florida, 299 E. Broward Blvd., Room 108, Fort Lauderdale, FL 33301), a true and correct copy of the foregoing was served by ( ) electronic mail / ( ) U.S. Mail upon counsel of record for Contessa Marine Research LLC (and Intervenor/related counsel of record):

Brooke Bishop, Esq. & James H. Perry II, Esq. — Perry Maritime Law Group, brooke.bishop@maritimeattorneys.com, perry@maritimeattorneys.com, perry@yachtlawyer.com

Michael T. Moore, Esq. & Caycie Flitman, Esq. — Moore & Company, P.A., 255 Aragon Avenue, 3rd Floor, Coral Gables, FL 33134, michael@moore-and-co.com, cflitman@moore-and-co.com

______________________________________________

Charles Jacob Stratmann, Counter-Defendant, Pro Se (Individually)